**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

PETROL LOGIC LLC, a Colorado limited liability company, RUBY CANYON DENTAL GROUP PC, a Colorado professional corporation, DC DENTAL PLLC d/b/a FRUITA FAMILY DENTAL, a Colorado professional limited liability company, and CRESTED OAK DENTISTRY PLLC, a Colorado professional limited liability company, individually on behalf of themselves and on behalf of all others similarly situated,

        Plaintiff,

v.

G&A OUTSOURCING, LLC, d/b/a G&A PARTNERS, a Texas limited liability company,

        Defendants.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

Defendant G&A Outsourcing, LLC, d/b/a G&A Partners—a human resources outsourcing company that performs payroll services, benefits, employee withholding, and other HR functions for small businesses—systematically overcharges its clients millions of dollars for federal and state unemployment tax. That is, G&A (1) uses the wrong withholding rate, (2) continues withholding for unemployment taxes even after statutory limits have been reached, and (3) fails to apply for Federal Unemployment Tax Act ("FUTA") credits of 5.4% on IRS Form 940 that would substantially reduce its clients' tax liability—choosing instead to keep excessively-collected amounts (and generally refusing to return them). For such breaches of contract and related causes, Plaintiffs seek the entry of an Order barring Defendant for over-collecting for federal and state unemployment taxes and judgment for all actual damages and other amounts allowed by law.

1

As such, Plaintiffs allege as follows on personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, on information and belief, including investigation conducted by their attorneys.

## I.   INTRODUCTION

1. This case presents a class action challenging Defendant G&A Outsourcing, LLC's ("Defendant," "G&A," or "G&A Partners") practice of serially overbilling its clients for federal and state unemployment tax.

2. G&A is a human resources outsourcing company, also known as a professional employer organization ("PEO"), that functions as an external human resources department by handling payroll, employee benefits, and other HR-related needs for its clients (typically small businesses). Named plaintiffs Petrol Logic, LLC ("Petrol Logic"), Ruby Canyon Dental Group, PC ("Ruby Canyon"), DC Dental PLLC d/b/a Fruita Family Dental ("Fruita Family"), and Crested Oak Dentistry PLLC ("Crested Oak") are all current or former clients of G&A.

3. G&A's services include collecting federal and state unemployment tax when a payroll cycle is run and forwarding amounts due to the appropriate federal and state agencies.

4. Unfortunately for Plaintiffs and G&A's other clients, G&A unlawfully withdraws far more than the limits set for federal and state unemployment taxes, seriously overbilling its clients in the process.

5. With respect to the named Plaintiffs alone, G&A has over-collected tens of thousands of dollars for federal and state unemployment tax.

2

6. On information and belief, the excess funds were not forwarded to the federal and state agencies charged with the collection of unemployment taxes. Rather, the over-collected funds were retained by G&A.

7. Through this practice, G&A has bilked its clients out of thousands of dollars, all while enriching itself.

8. As such, and as explained further below, this Court should enter judgment in favor of Plaintiffs and the members of the proposed class enjoining Defendant from over-collecting federal and state unemployment tax and awarding actual damages to the Plaintiffs in addition to any other amounts allowed by law.

## II.     PARTIES

9. Plaintiff Petrol Logic is a Colorado limited liability company organized and existing under the laws of the state of Colorado, with its principal place of business located in Grand Junction, Colorado.

10. Plaintiff Ruby Canyon is a Colorado professional corporation with its principal place of business located in Grand Junction, Colorado.

11. Plaintiff Fruita Family is a Colorado professional limited liability company organized and existing under the laws of the state of Colorado, with its principal place of business located in Fruita, Colorado.

12. Plaintiff Crested Oak Dentistry is a Colorado professional limited liability company organized and existing under the laws of the state of Colorado, with its principal place of business located in Grand Junction, Colorado.

13. Defendant G&A is a Texas limited liability company organized under the laws of

3

Texas, with its principal place of business in Houston, Texas.

## III. JURISDICTION & VENUE

14. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d) *et seq.* in that the proposed Class consists of over 100 people, the Classes are minimally diverse, on information and belief more than $5 million is at issue, and none of the exceptions to CAFA jurisdiction applies.

15. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in this District, operates an office in this District, and a substantial part of the events giving rise to the claims asserted here occurred in this District. G&A regularly withholds unemployment tax for companies located in this District.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in and was directed to this District. The withholding errors at the heart of this Complaint were directed, in part, to this District and the failure to correct them occurred in part in this District. Venue is additionally proper because Plaintiffs reside in this District.

## IV. COMMON ALLEGATIONS OF FACT

17. G&A is an HR outsourcing company which provides payroll and employee benefits services to businesses.

18. In the process of providing these HR services for its clients, including Plaintiffs, G&A grossly overbills for unemployment tax withholding.

19. FUTA imposes a federal employer-side payroll tax to fund unemployment benefits. The tax is 6% of the first $7,000 that each employee makes in a year.

20. Under IRS regulations, however, and subject to exceptions not relevant here, if an employer timely pays state unemployment tax, the employer is entitled to a credit of 5.4% of FUTA taxable wages when IRS Form 940 is filed. That is, in general, employers are entitled to the maximum credit of 5.4% if state unemployment taxes are timely paid in full and the employer's state is not a credit reduction state.

21. Colorado and North Dakota are not credit reduction states, and each Plaintiff paid its state unemployment taxes in full and on time. G&A handled each step of this process for Plaintiffs and the other members of the FUTA Class.

22. Thus, Plaintiffs and the FUTA Class were only required to pay a FUTA tax rate or 0.6%, representing the base FUTA rate of 6% minus the 5.4% credit.

23. Despite the fact that Plaintiffs only owed 0.6%, As a result of Defendant's failure to claim the 5.4% credit on IRS Form 940, however, Defendants withdrew from Plaintiffs' financial accounts sums sufficient to cover the full 6%.

24. On information and belief, G&A never actually remitted the excess 5.4% to the IRS and has instead pocketed those funds, considering them to be "extra fees."

25. Similarly, in 2020 and 2021 the state of Colorado had a state unemployment tax rate ("SUTA") of 1.7% on the first $13,600 of wages.

26. G&A overcharged its clients SUTA tax in two ways: (1) by using the incorrect rates, and (2) by continuing to apply the SUTA charge against wages above the wage limit.

5

27. For Colorado, the SUTA tax in 2020 and 2021 was 1.7% on the first $13,600 paid in wages. In North Dakota, in 2020 the SUTA rate was 1.02% on the first $37,900 paid in wages to the employee. In 2021, the 1.02% rate was applied to the first $38,500 paid in wages to the employee.

28. Rather than adhere to these rates and caps, in 2020 G&A collected funds from Plaintiffs to cover SUTA tax at a rate of 5.91%. In 2021, G&A withdrew funds to cover SUTA to cover taxes at a rate of 5.95%. At no point did G&A adhere to the $13,600 wage cap in Colorado or the $37,900-$38,500 wage cap North Dakota. G&A never fully refunded the excess monies it collected. Further, on information and belief, G&A never remitted these excess withholdings to the IRS.

29. G&A's conduct has proved tremendously damaging to the Plaintiffs and the other class members. They have been collectively overcharged by millions of dollars.

30. G&A has been made aware of its failures to properly withhold and remit funds for federal and state unemployment taxes, and it has refused to fully refund the amounts over-withheld.

31. Consequently, and as set forth throughout this Complaint, Plaintiffs bring this class action against G&A to stop its serial practice of overcharging for federal and state unemployment tax.

32. Plaintiffs seek the relief set forth herein with respect to themselves and all others similarly situated.

**V.     FACTS SPECIFIC TO PLAINTIFFS**

33. Petrol Logic, Ruby Canyon, Fruita Family, and Crested Oak were all clients of a

6

human resources outsourcing company known as Pay Pros, which was a Nevada-based professional employer organization. G&A acquired Pay Pros in October 2019. Petrol Logic's contract with Pay Pros is attached hereto as Exhibit A. On information and belief, the contracts of other Pay Pros clients were substantially similar.

34. The issues related to unemployment tax overcharging began shortly after the Plaintiffs' accounts were transferred to G&A.

35. Petrol Logic has employees in both Colorado and North Dakota.

36. In both 2020 and 2021, Colorado SUTA rate was 1.7% on the first $13,600 of wages.

37. In 2021, the rate in North Dakota was 1.02% on the first $38,500 of wages. In 2020, the rate was 1.02% of the first $37,900.

38. Using the appropriate rates, Petrol Logic only should have paid $462.40 to Colorado and $11,316.26 to North Dakota in state unemployment taxes.

39. However, G&A's actual charge for SUTA for 2021 was a whopping $43,456.58. While it appears that G&A gave Petrol Logic a SUTA tax credit adjustment in the amount of $14,743.26 on March 24, 2021, this still results in a net amount charged to Petrol Logic for SUTA in 2021 of $28,713,32—more than twice the amount actually owed.

40. G&A was both charging the wrong rates (perhaps as high as 5.95%) and failing to stop applying the SUTA charge against wages once the state wage limits were hit.

41. In 2020, it appears that G&A was charging Petrol Logic approximately 5.91% for SUTA. In just the period from July 22, 2020, to December 31, 2020, G&A charged Petrol Logic $55,156.84 in SUTA tax. However, the actual amount owed should have been approximately

$10,400.

42. The result is Petrol Logic being overcharged SUTA tax for 2020 by at least $44,750, and most likely a significantly higher amount (Petrol Logic only has access to the invoices from July 22, 2020 through the end of the year and not from January 2020 through the first three weeks of July).

43. G&A similarly overcharged for FUTA. Given the 5.4% credit due to Petrol Logic under IRS regulations as a result of paying state unemployment tax on time, its FUTA tax for the entire year of 2021 should have been approximately $1,428. Instead, G&A collected $15,084.61 from Petrol Logic for FUTA. On information and belief, G&A failed to apply the 5.4% credit and/or continued to withhold for FUTA even after the $7,000 wage limit had been reached.

44. For 2020, G&A charged Petrol Logic $5,589.93 for FUTA from the July 22, 2020-December 31, 2020 period. FUTA for the entire year of 2020 should have only been $1,344.

45. Ruby Canyon and Fruita Family were overcharged in essentially the same manner during the same time period.

46. For 2020, Ruby Canyon was overcharged by $57,511.42 for FUTA and SUTA. G&A failed to apply the 5.4% credit, charged excessive rates, and/or failed to stop withholding once the wage limit had been reached.

47. On information and belief, the overcharging problem continued for Ruby Canyon in 2021.

48. Fruita Family was overcharged $526.01 for FUTA and $4,426.24 for SUTA in 2020.

49. In 2021, Fruita Family was overcharged $903.89 for FUTA and $10,098.09 for SUTA.

50. In 2021, Crested Oak was overcharged $4,346.76 for FUTA and $45,395.31 for SUTA. On information and belief, Crested Oak was overcharged in similar amounts for 2020.

51. All overcharging of Ruby Canyon, Fruita Family, and Crested Oak stemmed from the same issues that plagued Petrol Logic: (1) using the incorrect rates, (2) continuing to charge after the wage limits were hit, and (3) failing to apply the 5.4% credit.

52. As an actual and proximate cause of G&A's conduct, Plaintiffs have suffered actual damages in the form of overpayments. They've asked for a full return of such monies, but their requests were not met with refunds.

## VI.   CLASS ACTION ALLEGATIONS

53. In accordance with F. R. Civ. P. 23(b)(1) and (b)(3), Plaintiffs bring this class action on behalf of the following ascertainable Classes of persons:

> FUTA Class: All persons in the United States who: (1) for calendar years 2020 and 2021, (2) paid wages in any of the fifty (50) states which were not considered credit reduction states (3) were clients of G&A, (4) had their FUTA taxes handled and processed by G&A, (4) were overcharged for FUTA due to G&A applying the incorrect rate and/or failing to stop withdrawing monies for unemployment tax after the wage limits were reached, and (5) were prior customers of Pay Pros or other third-party PEOs with substantially-similar customer agreements and who never executed a contract directly with G&A.

> SUTA Class: All persons in the United States who: (1) for calendar years 2020 and 2021, (2) paid wages in Colorado and/or North Dakota (3) were clients of G&A, (4) had their SUTA taxes handled and processed by G&A, (4) were overcharged for SUTA due to G&A applying the incorrect rate and/or failing to stop withdrawing monies for unemployment tax after the wage limits were reached, and (5) were prior customers of Pay Pros or other third-party PEOs with substantially-similar customer agreements and who never executed a contract directly with G&A.

54. Membership in the Classes is entirely objective and can be verified by reviewing

a combination of Defendant's business records, court filings, government actions, publicly available documents, borrower communications, and other data and documents.

55.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the class definition following appropriate class discovery.

56.     Class Size (F. R. Civ. P. 23(a)(1)): Plaintiffs are informed and believe, and upon such information and belief aver, that the number of persons in the Classes is sufficiently numerous such that joinder of all members is wholly impracticable. Plaintiffs are informed and believe, and upon such information and belief aver, that the number of class members exceeds 250.

57.     Commonality (F. R. Civ. P. 23 (a)(2)): Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

    a. Whether G&A Partners overcharged/over-collected for FUTA;

    b. Whether G&A Partners overcharged/over-collected for SUTA;

    c. Whether G&A Partners correctly applied the SUTA tax credit for

Colorado or North Dakota, as applicable, on IRS Form 940;

        d.      Whether G&A remitted any excessively withheld sums to the IRS or, instead, whether G&A kept the money for itself;

        e.      Whether G&A Partner's overcharging/over-collecting breached the Plaintiffs' contractual rights;

        f.      Whether G&A Partners was unjustly enriched; and

        g.      Whether Plaintiffs are entitled to injunctive relief, damages, or both.

58.      Typicality (F. R. Civ. P. 23 (a)(3)): Plaintiffs' claims are typical of the claims of all class members. Plaintiffs each were overcharged for the same taxes due to G&A's serial but standard errors. Plaintiffs make the same claims and seek the same relief for themselves and all class members based upon the same theories and laws. The Defendant has acted the same or in a similar manner with respect to the Plaintiffs and all the class members.

59.      Fair and Adequate Representation (F. R. Civ. P. 23 (a)(4)): Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs are interested in this matter, have no actual conflicts, and have retained experienced and competent class counsel to represent the Classes.

60.      Predominance, Superiority, and Manageability (F. R. Civ. P. 23 (b)(3)): Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy. Proving the claims of the Plaintiffs will also prove the claims of the Classes without the need for separate or individualized proceedings and evidence regarding defenses or any exceptions to liability that the Defendant may assert and prove will come from business records

and reports and data and will not require individualized or separate inquiries or proceedings. The Defendant has acted pursuant to common policies or practices in the same or similar manner with respect to all class members, and the amount likely to be recovered by individual class members does not support individual litigation. Further, a class action will permit a large number of relatively smaller claims involving virtually identical facts and legal issues to be resolved efficiently in a single proceeding based upon common proofs. There is simply no reason that G&A's company-wide, systemic practices, policies and procedures should be litigated in dozens or even hundreds of separate trials. Rather, as G&A overcharged/over-withheld FUTA and SUTA with respect to everyone, the issues at the heart of this case predominate over any supposedly individualized issues.

61. This case is manageable as a class action in that liability and damages can be established for the Plaintiffs and the Classes with the same common proofs regarding the systemic nature of G&A's errors. Given that the FUTA and SUTA rates are standard, as are the wage limits, damages can be calculated in the same or a similar manner classwide, a class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense, a class action will contribute to uniformity of decisions concerning the Defendant's practices; and as a practical matter, the claims of the Classes are likely to go unaddressed absent class certification as no governmental authority or law enforcement is pursuing this matter, and the members of the Classes will likely see no actual relief absent class certification and judgment.

## VII.   CAUSES OF ACTION

**COUNT I:  Breach of Contract**
**On behalf of Plaintiffs and the Classes**

62. Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

63. Plaintiffs and members of the Class had contracts with Pay Pros under which Pay Pros was to perform payroll-related services.

64. G&A acquired Pay Pros and stepped into Pay Pros's shoes with respect to Pay Pros's contracts with the Plaintiffs.

65. Neither the Plaintiffs nor any other member of the alleged class executed any new agreement with G&A following G&A's acquisition of Pay Pros.

66. The contracts contain express terms as well as implied terms, including the implied covenant of good faith and fair dealing.

67. G&A breached the covenant of good faith and fair dealing by failing to accurately calculate FUTA and SUTA and requiring its customers to pay excessive sums for FUTA and SUTA in 2020 through the present.

68. As the outsourced human resources provider, G&A had discretion regarding the actual amounts that were to be deducted from Plaintiffs' business accounts to cover payroll, SUTA, and FUTA taxes, and G&A abused this discretion by (1) using the wrong withholding rate, (2) continuing to withhold for unemployment taxes even after required limits had been reached, and/or (3) failing to apply for the federal FUTA credit of 5.4%.

69. G&A's overcharging/over-withholding has resulted in tens of thousands of dollars in overpayments by Plaintiffs and the Class.

70. To the extent the contract contained an express provision requiring G&A to properly calculate and bill for unemployment tax, it was breached by G&A's failure to do so.

71. The contract also contains an implied duty of accurate billing and withholding. There is no point to the contract, or way the parties could reasonably rely on performance, if G&A could withhold whatever amounts it fancied. G&A breached this duty by overcharging by tens of thousands of dollars.

72. Plaintiffs were not alone. G&A has breached its agreements with other members of the alleged Class in the same way, by failing to accurately charge for FUTA and SUTA and instead overcharging and overcollecting by thousands of dollars. Such systematic conduct caused similar legal injury to Plaintiffs and the class members.

73. Defendants' conduct described herein has actually and proximately caused Plaintiff and the Class actual monetary damages, including lost monies.

74. Although Defendants may have issued partial refunds, millions of dollars wrongfully collected have yet to be refunded.

75. Plaintiffs seek actual damages in amounts to be proven at trial plus all other sums and forms of relief allowed by law.

### COUNT II:  Unjust Enrichment
### (In the Alternative to Count I)
### On behalf of Plaintiffs and the Classes

76. Plaintiffs reallege the foregoing allegations as if they were set forth fully herein.

77. G&A overbilled Plaintiffs and the Class members for FUTA and SUTA. It did so by both applying inflated withholding rates and by continuing to charge for unemployment tax even after the wage limits were reached.

78. Such conduct caused Plaintiffs and the other Class members actual monetary damages in the form of lost monies.

79. G&A presently retains such additional funds under circumstances that indicate it would be unjust to allow their continued retention.

80. G&A had no authority under the contract to charge Plaintiffs or the Class members such amounts. In the event the contract be found unenforceable, then the Court should disgorge G&A of the amounts it collected without authority.

81. Equity and fairness demand that Defendant should be disgorged of such funds and that restitution should be made to Plaintiffs plus such other amounts to be proven at trial.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Classes alleged herein, pray for the following relief:

A. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiffs as the representatives of the Classes and appointing their attorneys as Class Counsel;

B. An award of all actual monetary damages to be proven at trial to be placed into a common fund for the benefit of the members of the certified Classes;

C. An award of appropriate injunctive and corresponding declaratory relief to the extent allowed by law;

D. An award of pre- and post-judgment interest;

E. An award of reasonable attorneys' fees and costs to be paid out of the common fund or as otherwise allowed by law;

F. A payment to a suitable cy pres designee(s) of all monies not claimed, and

G. Such further and other relief the Court deems reasonable and just.

## IX.  JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: August 29, 2022

PETROL LOGIC LLC, a Colorado limited liability company, RUBY CANYON DENTAL GROUP PC, a Colorado professional corporation, DC DENTAL PLLC d/b/a FRUITA FAMILY DENTAL, a Colorado professional limited liability company, and CRESTED OAK DENTISTRY PLLC, a Colorado professional limited liability company, individually on behalf of themselves and on behalf of all others similarly situated,

By:  /s/ Patrick H. Peluso

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiffs and the Alleged Class*