IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02219-PAB-NRN

**PETROL LOGIC LLC**, **RUBY CANYON DENTAL GROUP PC**, **DC DENTAL PLLC**, d/b/a **FRUITA FAMILY DENTAL**, and **CRESTED OAK DENTISTRY PLLC**, et al.,

Plaintiffs,

v.

**G&A OUTSOURCING, LLC**, d/b/a **G&A PARTNERS**,

Defendant.

---

**PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS COMPLAINT (DKT. 7) AND TO STRIKE CLASS ACTION ALLEGATIONS (DKT. 8)**

---

**I.  INTRODUCTION**

This case challenges Defendant G&A Outsourcing, LLC's ("Defendant" or "G&A") systematic overcharging of its clients for federal and state unemployment tax. Specifically, Plaintiffs Petrol Logic LLC ("Petrol Logic"), Ruby Canyon Dental Group PC ("Ruby Canyon"), DC Dental PLLC, d/b/a Fruita Family Dental ("Fruita Family"), and Crested Oak Dentistry PLLC ("Crested Oak") (collectively "Plaintiffs") allege that Defendant charged them at rates grossly in excess of what was required by the Federal Unemployment Tax Act ("FUTA") and corresponding state unemployment insurance rates (referred to as "SUTA"), to the tune of tens of thousands of dollars per Plaintiff. Plaintiffs' Complaint seeks damages and other relief for such practices on behalf of themselves and a class of similarly-situated businesses.

1

Caught with its hand in the proverbial cookie jar, Defendant G&A seeks an early exit from the case via motions practice, asking the Court to dismiss Plaintiffs' complaint for failure to state a claim and strike Plaintiffs' class action allegations. The Court should deny both motions. Plaintiffs allege sufficient facts to state claims for breach of the covenant of good faith and fair dealing and, in the alternative, for unjust enrichment. Defendant's jurisdictional argument based on *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 198 L. Ed. 2d 395, 137 S. Ct. 1773 (2017) ("*Bristol-Myers*") fares no better, as courts have repeatedly declined to apply its reasoning to class actions. Likewise, G&A's attack on the class definition is patently premature. As such, and as explained more fully below, the Court should deny G&A's Motions so that Plaintiffs may have their day in Court.

## II.   FACTUAL BACKGROUND

G&A is a payroll company that handles human resources, withholdings, and other payroll related services for businesses. (Dkt. 1 at ¶ 2.) The Plaintiffs are businesses that had previously contracted with Pay Pros, a different payroll servicing company. (*Id.* ¶ 33.) In or around October 2019, Defendant G&A acquired Pay Pros, and, as a result of the purchase, took over the performance of payroll services for Plaintiffs. (*Id.* ¶¶ 33–34.) The crux of the case is that, after taking over Plaintiffs' accounts, G&A seriously over-collected sums supposedly due for FUTA and SUTA. (*Id.* ¶¶ 3–6.) These tax rates are owed as a result of wages paid—FUTA imposes a 6% tax rate on the first $7,000 paid (though employers are entitled to a credit of 5.4% if timely paid), and SUTA rates vary between states (*e.g.*, in Colorado, SUTA is a 1.7% tax rate on the first $13,600 paid). (*Id.* ¶¶ 19–25.) Rather than charging the correct amounts and returning the 5.4% rebate to Plaintiffs for timely payment, G&A over-collected and kept the difference for

itself. (*See id.* ¶¶ 22–24). Upon discovering the over-charging, Petrol Logic and representatives of the other Plaintiffs reached out to G&A. (*Id.* ¶ 30, 52.) G&A did not deny overcharging for FUTA and SUTA—rather, it considered the over-collected funds "extra fees." (*Id.* ¶ 24.)

On August 29, 2020, Plaintiffs filed their Complaint against G&A for breach of contract and unjust enrichment as a result of Defendant's alleged overcharging. (Dkt. 1.) As an exhibit to the Complaint, Plaintiffs attached two documents between Petrol Logic and Pay Pros: a one-page service agreement and a quote sheet. (Dkt. 1-1.) Executed in January 2011, these documents refer to an "administration fee" of 1.25%, and the quote sheet states a "cost estimate" of 12.77% for "statutory matching expense." (*Id.*) Nowhere are these terms defined. Plaintiffs further alleged, on information and belief, that the contracts of other Pay Pros clients were substantially similar to their Pay Pros agreements. (Dkt. 1 at ¶¶ 33.) Defendant responded by filing its motions to dismiss and strike on October 21, 2022. (Dkt. 7, 8.)

## III. ARGUMENT

G&A's motion to dismiss and strike should be denied. First, Plaintiffs have adequately set forth their claims for breach of contract and, in the alternative, for unjust enrichment. G&A's position—that it was supposedly permitted by the Pay Pros quote sheet to pocket amounts beyond sums required to meet FUTA and SUTA—is based on its own flawed and self-serving reading of the documents. Second, Defendant's argument that the Court lacks jurisdiction over potential out-of-state class members is based on *Bristol-Myers*, a Supreme Court decision regarding mass tort cases that courts across the country have declined to extend to class actions. Finally, G&A's attacks on the class definition are both without merit and inappropriate at this stage of the case. The Court should deny G&A's motions in their entirety.

### A. G&A's Rule 12(b)(6) Motion To Dismiss[1] Should Be Denied.

To survive dismissal, a complaint must contain sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "All well-pleaded factual allegations…are accepted as true and viewed in the light most favorable to the nonmoving party." *Hoskins v. Gonnell*, No. 13-CV-02719-WYD-CBS, 2014 WL 1151905, at *2 (D. Colo. Mar. 21, 2014); *Sutton v. Utah State School for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle it to relief." *Hoskins*, 2014 WL 1151905, at *2 (alterations in original). Indeed, Rule 8 affords "a liberal pleading standard, and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Moody v. MicroPort Orthopedics, Inc.*, No. 121CV00937CNSSTV, 2022 WL 10032167, at *1 (D. Colo. Oct. 17, 2022) (quoting *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).

Defendant's Rule 12(b)(6) motion for failure to state a claim should be denied. To hear G&A tell it, Plaintiffs' claim for breach of the covenant of good faith and fair dealing fails on account of a single line in the Pay Pros quote sheet, labeled as a cost estimate for "statutory matching expense." This argument falls apart. As detailed below, Plaintiffs' factual allegations—

---

[1] Defendant includes language related to Rule 12(b)(2) asserting that the Court should consider dismissal for lack of personal jurisdiction "to the extent that the Court views the issue as being better addressed" in a motion to dismiss rather than its motion to strike. (Dkt. 7 at 10.) Defendant makes no arguments that the Court lacks jurisdiction regarding Plaintiffs' claims but only as to the claims of yet unknown putative class members that are not located in Colorado. Plaintiffs address the jurisdictional argument in Section B., *infra*, regarding G&A's motion to strike.

when accepted as true and viewed in a light most favorable to them—demonstrate that Defendant breached the contract or unjustly enriched itself by overcharging for FUTA and SUTA tax rates and retaining the excess as additional unearned compensation.

### 1.   G&A breached the covenant of good faith and fair dealing by overcharging for FUTA and SUTA and keeping the excess.

G&A argues for dismissal of Plaintiff's breach of the covenant of good faith and fair dealing claim because, according to G&A, the Pay Pros quote sheet allowed it to charge the amounts it collected. (Dkt. 7 at 5–7.) Defendant's argument fails for several reasons.

Under Colorado law, "every contract contains an implied duty of good faith and fair dealing." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). This covenant may be relied upon when a term in the contract allows for discretion: "[t]he duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Id.* (citing *Hubbard Chevrolet Co. v. General Motors Corp.,* 873 F.2d 873, 876 (5th Cir. 1989)). In other words, when a term is left to one party's control, the other party "is left to the good faith of the party in control," and the implied duty of good faith and fair dealing protects from abuses of such discretion. *See Amoco*, 908 P.2d at 498–499 (quoting Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv.L.Rev. 369, 383–84 (1980)).

G&A argues dismissal is warranted because, according only to G&A, the service agreement and quote purportedly allowed it to charge up to 14.02% from Petrol Logic (a combination of the 1.25% administration fee and 12.77% estimated "statutory matching expense") and it collected amounts under that supposed cap. Further, G&A claims that that no

term of the contract vested it with any discretion as required to state a claim for breach of the covenant of good faith and fair dealing. (Dkt. 7 at 5–7.) G&A is mistaken.

Taking the second argument first, plaintiff squarely alleges that G&A was vested with discretion as to the particulars of its performance—Plaintiffs' agreement to employ a sophisticated payroll services company left discretion to Pay Pros and G&A to handle the financials in accordance with legal requirements, and left Plaintiffs "to the good faith of the party in control." *See Amoco*, 908 P.2d at 498–499. As alleged, "[t]here is no point to the contract, or way the parties could reasonably rely on performance, if G&A could withhold whatever amounts it fancied," even up to a cap. (Dkt. 1 at ¶ 71.) Plaintiffs specifically allege that, by overbilling for amounts owed for SUTA and FUTA taxes, G&A "abused this discretion" in its performance and breached the contract by overbilling its clients in bad faith. (*See id.* ¶ 68.) Indeed, the Complaint provides specific facts detailing the amounts Plaintiffs paid, with a comparison of actual tax rates and the rates at which G&A improperly billed. (*Id.* ¶¶ 25–28, 36–51.) Factual allegations must be taken as true on a motion to dismiss, and Plaintiffs have stated a claim for relief for abuse of discretion and breach of the covenant of good faith and fair dealing that is plausible on its face.

Defendants' first argument fares no better: the service agreement and quote sheet do not allow G&A to charge excessive sums for FUTA and SUTA. Both documents specify an "administration fee" of 1.25%, which plainly reflects payment to Pay Pros for its services each pay period (in Petrol Logic's case, bi-weekly). (Dkt. 1-1.) This fee appears to be the contract "price" payable to Defendant, which Plaintiffs agreed to pay in exchange for payroll services and the accurate administration of funds to account for taxes and statutory fees. (*See id.* ¶¶ 2–4, 17, 33, 63, 68, 71.) The service agreement contains no specification as to the amount of payroll

expenses Petrol Logic would owe each period, likely because that amount would fluctuate based on total wages paid and evolving tax rates. (*See, e.g.*, Dkt. 1 at ¶¶ 19–20, 27, 36–37.) For its part, the quote sheet contains a line item "cost estimate" of 12.77% for "Statutory Matching Expense." (Dkt. 1-1 at 2.) The term "statutory matching expense" is not defined anywhere. It is not clear whether 12.77% was determined by statutory expense or tax rates as existing in 2011, nor is it readily apparent why amounts determined by statute would require an "estimate" in the first instance. The documents do not provide any explanation as to what the 12.77% estimate contains, and it is unclear what statutory expenses it may include, such as income tax, social security and Medicare ("FICA"), or state and federal unemployment tax. (Dkt. 1-1 at 3.)

In any case, it would be nonsensical to read "statutory matching expense" to mean "FUTA and SUTA charges" such that G&A would be permitted to extract any amount it wanted from Plaintiffs, regardless of the actual SUTA and FUTA tax rates and laws, as long as they did not exceed 12.77% plus the administrative fee.[2] *See Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 740 (Colo. App. 2002) ("[A] contract should not be read to yield an absurd result") (citing *Atmel Corp. v. Vitesse Semiconductor Corp.,* 30 P.3d 789 (Colo.App.2001)). In short, taking the facts in a light most favorable to Plaintiffs demonstrates that the service agreement and quote sheet clearly did not permit G&A to charge FUTA and SUTA up to 12.77%.

Indeed, at best G&A has offered a reading of the documents at this stage of the case that is equally as reasonable as Plaintiffs' interpretation, rendering the agreement ambiguous. *See*

---

[2] Defendant's interpretation of the 12.77% "statutory matching expense" estimate as permitting it to charge any amount for FUTA and SUTA taxes contradicts its argument against discretion—on the one hand G&A contends that the contract afforded it no discretion, while on the other it claims that it had the discretion to charge up to the limit set forth in the quote sheet.

*Moland v. Indus. Claim Appeals Off. of State*, 111 P.3d 507, 510 (Colo. App. 2004) ("A contract is ambiguous if it is fairly susceptible of more than one interpretation and, if so, the determination of the parties' intent is a question of fact.") (*citing Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909 (Colo.1996)). Evidence should be considered, and if the parties' intent cannot be divined through extrinsic evidence, the ambiguity should ultimately be interpreted "against the drafter." *See Commc'ns Techs., Inc. v. Spiral Aviation Training Co., LLC*, No. 06 CV 00666 MSK BNB, 2007 WL 572121, at *1 (D. Colo. Feb. 20, 2007). Dismissal is simply improper.

In short, Plaintiffs' claim for breach of contract should be permitted to proceed. G&A cannot show, as a matter of law on the pleadings, that the service agreement and quote sheet allowed it to charge the excessive sums challenged in the Complaint. As such, the Motion to Dismiss should be denied.

        **2.     Plaintiffs adequately plead their alternative claim for unjust enrichment.**

G&A also moves to dismiss Plaintiffs' alternative claim for unjust enrichment, asserting that the claim fails due to the existence of a contract between the Parties. (Dkt. 7 at 8–10.) G&A's argument is untenable.

Unjust enrichment is a claim that does not depend on the existence of a contract: courts are permitted to "imply a contract in law, often termed a quasi-contract, and allow recovery to serve the 'law of natural immutable justice and equity.'" *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Plaintiffs generally cannot recover for unjust enrichment where an express contract exists, but there are two exceptions:

> First, a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the

> express contract. *Scott Co. v. MK–Ferguson Co.,* 832 P.2d 1000 (Colo. App. 1991). Second, a party can recover on a quasi-contract when the party "will have no right under an enforceable contract." *Backus v. Apishapa Land & Cattle Co.,* 44 Colo.App. 59, 62, 615 P.2d 42, 44 (1980).

*Id.*; *see also Backus v. Apishapa Land & Cattle Co.*, 44 Colo. App. 59, 61–62, 615 P.2d 42, 44 (1980) ("A plaintiff is entitled to recover based on the unjust enrichment of a defendant when the plaintiff has no alternative right on an enforceable contract.").

Here, Plaintiffs have plainly alleged their claim for unjust enrichment "in the alternative" to their claim for breach of contract. (Dkt. 1 at 14.) Plaintiffs set forth the manner in which G&A has been unjustly enriched and request that, "[i]n the event the contract be found unenforceable" as to the conduct alleged, the Court should disgorge G&A of the funds with which it was unjustly enriched. (*See id.* ¶ 80.) The Complaint contains detailed allegations regarding the amounts that G&A allegedly overcharged Defendant, and G&A's continued retention of and failure to return the excess amounts support the reasonable inference that Defendant was unjustly enriched. If the Court ultimately concludes that the Pay Pros contracts are enforceable and Plaintiffs have a right to relief for G&A's breach, the alternative claim for unjust enrichment would be redundant and suited for dismissal. At the motion to dismiss stage, however, Plaintiffs have met their burden to support both claims against Defendant, and G&A's motion to dismiss for failure to state a claim should be denied.

### B. Defendant's Motion To Strike The Class Allegations Should Also Be Denied.

In addition to moving to dismiss, G&A moves to strike any class members outside of Colorado from the class definition. A motion to strike is a "drastic remedy" that is "disfavored by the courts." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2013

9

WL 5448078, at *2 (D. Colo. Sept. 27, 2013) (quoting *Francis v. Mead Johnson & Co.,* No. 1 0–cv–00701–JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010)). A motion to strike class allegations is "even more disfavored" because it "requires a reviewing court to 'preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Friedman*, 2013 WL 5448078, at *2 (quoting *Francis*, 2010 WL 3733023, at *1); *see also Cleary v. Whole Foods Mkt. Rocky Mountain/southwest L.P.*, No. 15-CV-01247-MEH, 2016 WL 7048899, at *2 (D. Colo. Dec. 5, 2016) ("To pronounce finally, prior to allowing any discovery, the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendant's ken, seems precipitate and contrary to the pragmatic spirit of Rule 23."). Indeed, a movant has the high burden of showing that "it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Cleary*, 2016 WL 7048899, at *2; *see Friedman*, 2013 WL 5448078, at *2.

G&A moves to strike Plaintiffs' class allegations, arguing that: (1) the Court cannot exercise personal jurisdiction over Defendant for the claims of putative class members that did not reside in Colorado, and (2) class membership is supposedly not ascertainable by objective criteria. (Dkt. 8 at 2.) Neither argument has merit, and the request to strike should be rejected.

### 1. G&A's jurisdictional argument is based on *Bristol-Myers*, which does not apply to class actions.

Defendant first argues that the class allegations should be stricken for lack of personal jurisdiction. To be sure, G&A "does not dispute" that the Court "has specific jurisdiction over G&A with respect to the purported claims of the four Plaintiffs," who are residents of and paid

10

wages in Colorado for which Defendant provided payroll services. (Dkt. 8 at 7.) The heart of Defendant's dispute is that the Court supposedly lacks jurisdiction over unidentified, putative class members who may not reside in Colorado or pay wages in Colorado. (*Id.*)

G&A's argument is premised upon *Bristol-Myers*, a decision in which the Supreme Court applied "settled principles" of law in holding that a California state court lacked personal jurisdiction over the state law claims of nonresidents in a mass tort action. *Bristol-Myers*, 137 S. Ct. at 1777, 1781. The Supreme Court's decision did *not* address whether the same outcome would apply in federal court, nor did it address whether the same result would be required in a class action. *Id.* at 1783–84, 1789 n.4 (Sotomayor, J., dissenting); *Lyngaas v. Ag*, 992 F.3d 412, 434 (6th Cir. 2021). Nevertheless, defendants have asserted that *Bristol-Myers* imposes a new jurisdictional bar to multi-state class actions. In rejecting this argument, the Sixth Circuit has explained:

> Despite the pains that the Supreme Court took to limit is decision, litigants have rushed to argue that [*Bristol-Myers*] renders many nationwide class actions constitutionally invalid for lack of specific personal jurisdiction over the defendant with respect to the claims of unnamed class members. The vast majority of lower courts have rejected their arguments, as has the only circuit court to have so far addressed the issue. . . .
>
> We follow their lead in holding that [*Bristol-Myers*] does not extend to federal class actions. There are at least two related reasons supporting the long-standing rule. First, a class action is formally one suit in which, as a practical matter, a defendant litigates against only the class representative. Second and relatedly, precedent shows that absent class members are not considered "parties," as a class representative is, for certain jurisdictional purposes.

*Lyngaas*, 992 F.3d at 434–35 (citations omitted); *see also Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020) ("Once certified, the class as a whole is the litigating entity . . . , and its affiliation with a forum depends only on the named plaintiffs. . . . The current debate was

11

sparked by the Supreme Court's decision in *Bristol-Myers*—a case that did *not* involve a certified class action . . . [and] does not govern here.").

Although the Tenth Circuit has not addressed this issue yet, at least one decision in this Court has reached the same conclusion as the majority of courts across the nation—*Bristol-Myers* does not apply to class actions because "it is the jurisdiction over the named plaintiff that matters, not jurisdiction over the absent parties." *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2019 WL 5394050, at *7 (D. Colo. Oct. 22, 2019), *report and recommendation adopted*, No. 19-CV-00601-CMA-KLM, 2020 WL 2079188 (D. Colo. Apr. 30, 2020).

Defendant ignores the majority of cases and instead cites to a few minority cases in which courts declined to recognize the distinction between class actions and mass torts. (Dkt. 8 at 8–9.) The Court should follow the majority and find that determining jurisdiction over unnamed class members is unnecessary in the class action context: jurisdiction depends upon the named plaintiffs, not unnamed parties. *Murphy*, 2019 WL 5394050 at *7. Even if a nationwide class is ultimately certified, jurisdiction will depend on the Plaintiffs as the named parties to the suit. Here, Plaintiffs reside in Colorado and their contacts with G&A implicate wages in this state. This is decidedly different from *Bristol-Myers*, in which "most" of the plaintiffs (592 of 678) who filed in one of eight complaints were nonresidents with no tie to the forum state of California. *Compare* (Dkt. 1 at ¶¶ 9–16); *with Bristol-Myers*, 137 S. Ct. at 1778. Any out-of-state class members here will be connected to the forum through the named plaintiffs.

In short, *Bristol-Myers* is neither analogous nor applicable to the case at hand. The Court's exercise of personal jurisdiction over Defendant in this case depends upon the claims of the named class members, and G&A does not dispute that the Court has jurisdiction over their

claims.[3] *Bristol-Myers* was a mass tort action in which jurisdiction over each named plaintiff was under consideration; a class action under Rule 23 does not warrant the same analysis, as unnamed class members will not become "parties" for jurisdictional purposes. The majority of courts across the country, including both circuit courts to address this matter, declined to extend the holding *Bristol-Myers* class actions, and this Court should do the same. G&A's motion to strike class allegations for lack of jurisdiction over the claims of unidentified, unnamed putative class members should be denied.

### 2. Defendant's attacks on the class definition are premature.

Defendant's second argument for striking class allegations is that, based on the definition in the complaint, class membership would not be ascertainable by reference to objective criteria. (Dkt. 8 at 9.) G&A's argument is ill-suited for consideration at the pleadings stage.

First, "[a] court has 'plenary power to modify the class definition ... at any time prior to judgment, [and] the parties are free to move for modifications to the class definition should subsequent events reveal that the class definition is unworkable.'" *Ramos v. Banner Health*, No. 15-CV-2556-WJM-NRN, 2019 WL 646082, at *1 (D. Colo. Jan. 29, 2019) (quoting *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 645 (D. Utah 1998)); *see also Abraham v. WPX Energy Prod.*,

---

[3] G&A does not deny that the Court has specific jurisdiction over Plaintiffs' claims—they all reside in Colorado and G&A conducts business with them in Colorado, for the processing of wages and taxes in Colorado. Putative class members may also be headquartered in Colorado, or they may do sufficient business and pay wages in Colorado such that their relationship with G&A similarly involves transactions involving this state. Again, however, the contacts of class members are irrelevant given the nature of this case as a class action as opposed to a mass tort, where a defendant litigates against all parties rather than just representative plaintiffs.

*LLC*, 322 F.R.D. 592, 610 (D.N.M. 2017) ("Tenth Circuit language . . . suggest[s] that a court need not hold a plaintiff to the class definition in the operative complaint.").[4]

Defendant asserts that the current class definition's reference to "substantially-similar customer agreements" renders class membership unascertainable. (Dkt. 8 at 9.) For some courts, the question of ascertainability remains part of the Rule 23 analysis. *See, e.g.*, *Wendell H. Stone Co., Inc v. Five Star Advert., LLC*, No. 19-CV-03157-PAB-STV, 2021 WL 1080398, at *3 (D. Colo. Mar. 17, 2021); *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 555 (D. Colo. 2014). Defendant acquired Pay Pros—it is unclear whether G&A acquired other payroll processing companies (and other, similar agreements), or whether G&A has its own service agreement with clients. To the extent any of those contracts contain the same or substantively similar language as the Pay Pros documents, businesses subject to those agreements who were overcharged for FUTA and SUTA should not be required to bring separate cases—the current Plaintiffs, if successful, would sufficiently vindicate their legal rights. This merely requires a review of those contracts during discovery.

Prior to any discovery as to G&A's other contracts and service agreements, however, striking the class allegations is improper. Plaintiffs specifically pleaded in the Complaint that

---

[4] Indeed, litigants and judges regularly modify class definitions. *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005); *see also Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 525 (E.D. Tex. 2003) *aff'd*, 100 F. App'x 296 (5th Cir. 2004) (finding leave to amend proper where "the parties filed additional briefing on the class certification issues and Plaintiffs filed a motion to amend the class definition in order to comply with the summary judgment order and the discussions during the class certification hearing"); *Jones v. Nat'l Council of Young Men's Christian Associations of the U.S.*, 09 C 6437, 2012 WL 5356038 (N.D. Ill. Oct. 30, 2012) (Courts "routinely permit modification of the proposed class definition") (citation omitted); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. 2011); *Mazur v. eBay Inc.,* 257 F.R.D. 563, 568 (N.D. Cal. 2009).

amending the class definition may be necessary following class discovery. (Dkt. 1 at ¶ 55.) Documents may reveal, for example, that G&A's agreements with other customers are not "substantially-similar" to the Pay Pros documents due to inclusion of additional material terms. Discovery could also reveal contracts that have no material differences, such that the clients warrant inclusion as class members. Ascertaining which clients possessed similar contracts and were overcharged in the same way should be relatively straightforward. In short, discovery will reveal the extent of the class. There is no basis for striking the class allegations now.

## IV.   CONCLUSION

Defendant's motions to dismiss the Complaint and strike Plaintiffs' class allegations should be denied. Plaintiffs set forth facts to support their claims for breach of contract and, in the alternative, for unjust enrichment. Additionally, Defendant has not demonstrated "impossibility" that would warrant striking the class allegations. *Bristol-Myers* does not apply to class actions, and it is premature to review the ascertainability of the class based on the current definition. Accordingly, the Court should deny Defendant's motions and award such relief as it deems necessary and just.

Respectfully Submitted,

Dated: November 14, 2022              By: /s/ Patrick H. Peluso

Patrick H. Peluso
ppeluso@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's CM/ECF system.

/s/ Patrick H. Peluso